[815 NYS2d 743]

In the Matter of SOLOMON ABRAHAMS, a Suspended Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, June 6, 2006

**APPEARANCES OF COUNSEL**

*Gary L. Casella,* White Plains (*Matthew Renert* of counsel), for petitioner.

*Solomon Abrahams,* White Plains, respondent pro se.

**OPINION OF THE COURT**

Per Curiam.

The respondent was served with a petition dated November 9, 2003, containing eight charges of professional misconduct against him and an amended supplemental petition dated November 18, 2004, containing an additional 27 charges. He served an answer to the petition dated May 19, 2004, and an

answer to the amended supplemental petition dated December 16, 2004. Following a preliminary conference, a hearing on Charges One through Eight was held on June 16, 2004. The respondent appeared pro se, and the petitioner submitted exhibits into evidence and rested its case without presenting any witnesses. The respondent submitted two exhibits and testified on his own behalf. In a report dated August 10, 2004, the Special Referee sustained all eight charges. The petitioner moves for an order confirming the report of the Special Referee with respect to the eight charges, imposing discipline upon the respondent and taking whatever further action that this Court may deem just and proper. The respondent cross-moves for an order disaffirming the report of the Special Referee and dismissing the petition. With respect to Charges Nine through Thirty-five set forth in the amended supplemental petition, on April 20, 2005, a prehearing conference was held during which the Special Referee set the hearing date for May 24, 2005, which was thereafter rescheduled to June 22, 2005. On June 3, 2005, the respondent filed a motion with this Court for an order recusing the assistant counsel for the petitioner, the Special Referee, and this Court from all further prosecution or the presiding over of disciplinary proceedings against him, and assigning all further disciplinary matters involving him to another Appellate Division. By letter dated June 21, 2005, the Special Referee advised the respondent that inasmuch as his motion did not contain a stay, the hearing would proceed and, should he not appear, a default hearing would be conducted. On June 22, 2005, a hearing was conducted and the respondent failed to appear. The Special Referee granted the petitioner's motions declaring the respondent in default and deeming all of the allegations against him in the amended supplemental petition admitted. The petitioner submitted exhibits into evidence and presented the testimony of one witness. The Special Referee sustained Charges Nine through Thirty-five against the respondent. The petitioner now moves for an order confirming the report of the Special Referee, imposing discipline upon the respondent and taking whatever further action that this Court may deem just and proper. The respondent cross-moves to, inter alia, disaffirm the Special Referee's report.

Charges One and Two pertain to the respondent's convictions of a "serious crime" within the meaning of section 90 (4) (d) of the Judiciary Law and section 691.7 (b) of the Rules Governing the Conduct of Attorneys in the Appellate Division, Second Department (22 NYCRR 691.7 [b]) in violation of Code of Profes-

sional Responsibility DR 1-102 (a) (3) (22 NYCRR 1200.3 [a] [3]).

Charge One alleges that the respondent was found guilty of criminal contempt, for his failure to obey an order of the Supreme Court, Westchester County, in a civil action entitled *Caiola v Allcity Insurance Company*.

Charge Two alleges that the respondent was found guilty of criminal contempt for his failure to obey an order of the Supreme Court, Westchester County, in a civil matter entitled *Matter of Marshall Weinerman for Dissolution of Parkside Limited Liability Company*.

Charges Three through Eight pertain to the respondent's failure to cooperate with an investigation by the Grievance Committee of a sua sponte complaint of professional misconduct against him.

Charge Three alleges that the respondent engaged in conduct prejudicial to the administration of justice by failing to respond to the Grievance Committee's requests for records and information in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]).

Charge Four is predicated upon the factual allegations of Charge Three and further alleges that the respondent engaged in conduct adversely reflecting upon his fitness to practice law in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Charge Five alleges that the respondent engaged in conduct prejudicial to the administration of justice by failing to comply with a judicial subpoena duces tecum so ordered by this Court in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]).

Charge Six is predicated upon the factual allegations of Charge Five and alleges that the respondent engaged in conduct adversely reflecting upon his fitness to practice law in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Charge Seven is predicated upon the factual allegations of Charge Three and further alleges that the respondent failed to produce financial records to the Committee in violation of Code of Professional Responsibility DR 9-102 (i) (22 NYCRR 1200.46 [i]).

Charge Eight is predicated upon the facts of Charge Five and further alleges that the respondent failed to produce financial

records to the Committee in violation of Code of Professional Responsibility DR 9-102 (i) (22 NYCRR 1200.46 [i]).

Charges Nine through Thirty-one pertain to the respondent's failure to comply with this Court's October 16, 2002, order suspending him from the practice of law.

Charge Nine alleges that the respondent engaged in conduct prejudicial to the administration of justice in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]) and 22 NYCRR 691.10, by continuing to act as a signatory for an attorney escrow account subsequent to his suspension from the practice of law.

Charge Ten alleges that by acting as an unauthorized signatory on an attorney trust account, the respondent violated Code of Professional Responsibility DR 9-102 (e) (22 NYCRR 1200.46 [e]).

Charge Eleven alleges that the respondent's firm, S. Abrahams & Associates, P.C., received a $15,000 check dated October 21, 2002, on behalf of Veronique Valescot, which was deposited into the firm's IOLA account. On or about November 11, 2002, the respondent issued a $5,000 check from the IOLA account payable to the firm, in whole or in part, for an attorney's fee from the Valescot proceeds which was deposited into the firm's operating account. Thereafter, the respondent issued checks from the operating account payable to himself and/or to cash and/or to his spouse and/or to a personal creditor.

Charge Twelve alleges that the respondent's firm received a $7,000 check dated October 24, 2002, on behalf of Sharon Jackson, which was deposited into the firm's IOLA account. On or about November 14, 2002, the respondent issued a $2,700 check from the firm's IOLA account payable to the firm, in whole or in part, for an attorney's fee from the Jackson proceeds, which was deposited into the firm's operating account. Thereafter, the respondent issued checks from the firm's operating account payable to himself and/or to cash and/or to his spouse and/or to a personal creditor.

Charge Thirteen alleges that the respondent's firm received a $20,000 check dated November 8, 2002, as proceeds on behalf of Laura Moore which was deposited into the firm's IOLA account. On or about November 26, 2002, the respondent issued a $7,228 check from the IOLA account payable to the firm, in whole or in part, for an attorney's fee from the Moore proceeds, which was deposited into the firm's operating account. Thereafter, the

respondent issued checks from the firm's operating account payable to himself and/or to cash and/or to his spouse and/or to a personal creditor.

Charge Fourteen alleges that the respondent's firm received a $25,000 check dated December 3, 2002, on behalf of Jamie Hechtman-Ulloa which was deposited into the firm's IOLA account. On or about March 21, 2003, the respondent issued a check from the IOLA account for $8,543 payable to the firm, in whole or in part, for an attorney's fee from the Hechtman-Ulloa proceeds, which was deposited into the firm's operating account. Thereafter, the respondent issued checks from the operating account payable to himself and/or to cash and/or to his spouse and/or to a personal creditor.

Charge Fifteen alleges that the respondent's firm received a $10,000 check dated January 15, 2003, on behalf of Stanley Mobley which was deposited into the firm's IOLA account. On or about February 3, 2003, the respondent issued a $3,333 check from the IOLA account payable to the firm, in whole or in part, for an attorney's fee from the Mobley proceeds, which was deposited into the firm's operating account. Thereafter, the respondent issued checks from the firm's operating account payable to himself and/or to cash and/or to his spouse and/or to a personal creditor.

Charge Sixteen alleges that the respondent's firm received a $12,500 check dated February 18, 2003, on behalf of Jose Estevez which was deposited into the firm's IOLA account. On or about March 4, 2003, the respondent issued a $4,654 check from the IOLA account payable to the firm, in whole or in part, for an attorney's fee from the Estevez proceeds, which was deposited into the firm's operating account. Thereafter, he issued checks from the operating account payable to himself and/or to cash and/or to his spouse and/or to a personal creditor.

Charge Seventeen alleges that the respondent's firm received a $15,000 check dated February 18, 2003, on behalf of Alicia Estevez, which was deposited into the firm's IOLA account. On or about March 4, 2003, the respondent issued a $5,488 check from the IOLA account payable to the firm, in whole or in part, for an attorney's fee from the Alicia Estevez proceeds, which was then deposited into the firm's operating account. Thereafter, the respondent issued checks from the operating account payable to himself and/or to cash and/or to his spouse and/or to a personal creditor.

Charge Eighteen alleges that the respondent's firm received a $4,250 check dated February 26, 2003, on behalf of Takisha

Broadie which was deposited into the firm's IOLA account. On or about March 11, 2003, the respondent issued a $1,400 check from the firm's IOLA account payable to the firm, in whole or in part, for an attorney's fee from the Broadie proceeds, which was deposited into the firm's operating account. Thereafter, the respondent issued checks from the operating account payable to himself and/or to cash and/or to his spouse and/or to a personal creditor.

Charge Nineteen alleges that the respondent's firm received a $7,250 check dated February 26, 2003, on behalf of Henrietta Broadie which was deposited into the firm's IOLA account. On or about March 11, 2003, the respondent issued a $2,400 check from the IOLA account payable to the firm, in whole or in part, for an attorney's fee from the Henrietta Broadie proceeds, which was deposited into the firm's operating account. Thereafter, the respondent issued checks from the firm's operating account payable to himself and/or to cash and/or to his spouse and/or to a personal creditor.

Charge Twenty alleges that the respondent's firm received a $4,750 check dated March 14, 2003, on behalf of Elva Forbes which was deposited into the firm's IOLA account. On or about March 24, 2003, the respondent issued a $1,500 check from the IOLA account payable to the firm, in whole or in part, for an attorney's fee from the Elva Forbes proceeds, which was deposited into the firm's operating account. Thereafter, the respondent issued checks from the operating account payable to himself and/or to cash and/or to his spouse and/or to a personal creditor.

Charge Twenty-one alleges that the respondent's firm received a $82,500 check dated April 7, 2003, on behalf of Lysette Soto which was deposited into the firm's IOLA account. On or about April 18, 2003, the respondent issued a $19,334 check from the IOLA account payable to his firm, in whole or in part, for an attorney's fee from the Lysette Soto proceeds, which was deposited into the firm's operating account. Thereafter, the respondent issued checks from the firm's operating account payable to himself and/or to cash and/or to his spouse and/or to a personal creditor.

Charge Twenty-two alleges that the respondent received a $5,000 check dated January 10, 2003, from the account of Kezban Mehmet, payable to his firm with a memo stating that the payment was a "Fee for lawyer." The check was deposited into the firm's operating account. Thereafter, the respondent issued checks from the firm's operating account payable to himself and/or to cash and/or to his spouse and/or to a personal creditor.

Charge Twenty-three alleges that on or about July 10, 2003, a $1,500 check dated July 8, 2003, from the bank account of Brophy Family Limited Partners, payable to Sol Abrahams with a memo stating that the payment was for "Legal Work" was deposited into the firm's operating account. Thereafter, the respondent issued checks from the firm's operating account payable to himself and/or to cash and/or to his spouse and/or to a personal creditor.

Charge Twenty-four alleges that on or about February 24, 2003, a $500 check dated February 21, 2003, from the bank account of Arthur L. Adams, payable to the respondent's firm with a memo stating that the payment was for "Legal Fees," was deposited into the firm's operating account. Thereafter, the respondent issued checks from the firm's operating account to himself and/or to cash and/or to his spouse and/or to a personal creditor.

Charge Twenty-five alleges that on or about April 22, 2003, a $2,000 check dated April 17, 2003, issued by Allstate Insurance Company payable to the respondent's firm with a memo indicating it was in payment for "Atty Fees" was deposited into the firm's operating account. Thereafter, the respondent issued checks from the operating account payable to himself and/or to cash and/or to his spouse and/or to a personal creditor.

Charge Twenty-six alleges that the respondent provided a legal opinion to a client regarding the client's legal matter while the respondent was under suspension.

Charges Twenty-seven through Thirty-one pertain to the respondent's failure to comply with this Court's order of suspension when he and/or someone at his direction reached an agreement with a prospective client for S. Abrahams & Associates, P.C., to be retained for a legal matter during the period of the respondent's suspensions.

Charge Twenty-seven alleges that on or about December 8, 2002, the respondent and/or someone at his direction reached an agreement for S. Abrahams & Associates, P.C., to be retained by Dawn Schiavone for a new matter arising out of a claim of personal injuries, wrongful death or property damage occurring on November 6, 2002.

Charge Twenty-eight is predicated upon the factual allegations of Charge Twenty-seven and further alleges that the respondent engaged in conduct prejudicial to the administration of justice in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]).

Charge Twenty-nine alleges that on or about December 21, 2002, the respondent and/or someone at his direction reached an agreement for S. Abrahams & Associates, P.C., to be retained by Dawn Schiavone as legal guardian for Jonathan Sniffen, a minor, for a new matter arising out of a claim of personal injuries, wrongful death or property damage occurring on November 6, 2002.

Charge Thirty alleges that on or about January 10, 2003, the respondent and/or someone at his direction reached an agreement for S. Abrahams & Associates, P.C., to be retained by Victor Lazo for a new matter arising out of a claim of personal injuries, wrongful death or property damage occurring on December 1, 2002.

Charge Thirty-one alleges that on or about February 12, 2003, respondent and/or someone at his direction reached an agreement for S. Abrahams & Associates, P.C., to be retained by Michelle Poline-Schwartz for a new matter arising out of a claim of personal injuries, wrongful death or property damage occurring on February 8, 2003.

Charge Thirty-two alleges that the respondent has engaged in frivolous conduct in violation of Code of Professional Responsibility DR 7-102 (a) (2) (22 NYCRR 1200.33 [a] [2]).

Charge Thirty-three alleges that the respondent engaged in conduct prejudicial to the administration of justice in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]), with respect to the November 8, 2002, order to show cause issued by United States District Court of the Southern District of New York concerning his proposed suspension.

Charge Thirty-four alleges that the respondent issued checks from the IOLA account for S. Abrahams & Associates, P.C., which failed to identify that account as an "Attorney Special Account," or "Attorney Trust Account," or "Attorney Special Account."

Charge Thirty-five alleges that on or about October 23, 2002, either respondent or someone under his supervision executed a retainer statement in the name of Sylvia Surdez, without her authorization, which was filed with the Office of Court Administration.

Based upon the evidence presented and the inferences to be drawn therefrom, the Special Referee properly sustained Charges One through Thirty-five. Accordingly, the petitioner's

motions to confirm the Special Referee's report with respect to Charges One through Eight and Charges Nine through Thirty-five are granted; the respondent's cross motions to, inter alia, disaffirm the Special Referee's reports are denied.

In determining an appropriate measure of discipline to impose, the Grievance Committee reports that the respondent's prior disciplinary history consists of four letters of caution and four letters of admonition, in addition to the five-year suspension he received in the prior disciplinary proceeding. In a letter of caution issued June 5, 1979, the respondent was cautioned for his failure and refusal to pursue a personal injury action that he had agreed to prosecute. By letter of caution issued May 5, 1981, he was cautioned for his improper communication with a party that he knew to be represented by counsel. In a letter of caution issued October 26, 1995, the respondent was cautioned for making an improper loan to a client. By letter of admonition issued February 26, 1996, the respondent was admonished for engaging in legal representation that created multiple conflicts of interest. By letter of admonition issued October 31, 1996, the respondent was admonished for engaging in undignified and discourteous conduct that was degrading to a tribunal and for frivolous conduct for which he was sanctioned by a trial court. In a letter of caution issued April 24, 1998, he was cautioned for failing to comply with the rules and standards for maintaining and using an attorney trust account and for using an improper trade name. By letter of admonition issued May 11, 1999, the respondent was admonished for breaching his fiduciary duties and by letter of admonition issued March 8, 2000, he was again admonished for his failure to comply with the rules and standards for maintaining and using an attorney trust account and for continuing to use a trade name. The respondent's motion for an order recusing the attorney for the Grievance Committee, the Special Referee, and this Court is denied as academic.

Under the totality of circumstances presented, the respondent is disbarred.

PRUDENTI, P.J., FLORIO, MILLER, SCHMIDT and ADAMS, JJ., concur.

Ordered that the petitioner's motions to confirm the Special Referee's reports are granted and the respondent's cross motions are denied; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Solomon Abrahams, is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent, Solomon Abrahams, shall continue to comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, the respondent, Solomon Abrahams, is commanded to continue to desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Solomon Abrahams, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).